# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| MARY E. LANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 4:07-cv-123-SEB-WGH |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## Entry Discussing Complaint for Judicial Review

Mary E. Lane ("Lane") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

## I. Background

Lane applied for DIB on February 2, 2004, alleging an onset date of April 17, 2003. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted via teleconference on May 15, 2006, before ALJ Deborah Smith. Lane was present, accompanied by her attorney. Medical and other records were introduced into evidence. Lane and a vocational expert testified. The ALJ denied Lane's application on July 25, 2006. On July 6, 2007, the Appeals Council denied Lane's request for review of the ALJ's decision, making the ALJ's decision final. *See Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Lane met the nondisability requirements of the Act and was insured for benefits through December 31, 2004; (2) Lane had not engaged in substantial gainful activity since the alleged onset of disability; (3) Lane's status-post resection of acoustic neuroma on April 17, 2003, suboccipital craniotomy for gross total resection of tumor on June 27, 2003, and a right gold weight implant and a right lower lid tightening on December 4, 2003, were considered "severe" based upon the requirements in the Regulations; (4) these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Lane's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the ALJ's decision; (6) Lane had the following residual functional capacity ("RFC"): she was unable to work around heights, hazards, or dangerous equipment, any job she could perform must require no sustained reading or use of hearing on the ride side (she can hear normally on the left side), and she  could lift and/or carry 20 pounds at most, she could walk only on level ground and she was unable to climb ladders, ropes or scaffolds; (7) Lane was unable to perform any of her past relevant work; (8) Lane was a younger individual between the ages of 45 and 49, she had a high school (or high school equivalent) education, and the issue of transferable work skills from any past relevant work was not material; (9) Lane had the RFC to perform a significant range of light work; and (10) although Lane's exertional limitations did not allow her to perform the full range of light work, using Medical-Vocational Rules 202.21-.22 as a framework for decision-making, there were a significant number of jobs in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Lane was not under a "disability" as defined in the Act at any time through her date last insured of December 31, 2004, and through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or  combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§

404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

## B.  Analysis

In 2003, Lane had brain surgery to remove a tumor which left her with various impairments, including partial loss of hearing and vision, balance problems, and nerve damage. (R. at 13-16). In this case, the ALJ determined that although Lane had severe impairments, she was not disabled because she could perform a significant range of light work. Lane argues that the ALJ's decision is not supported by substantial evidence. She asserts four claims of error.

Lane first argues that the ALJ erred in failing to consider a May 2006 letter submitted by treating physician Dr. Shah. The letter states that Lane's impairments satisfied Listing 2.07 (disturbance of labyrinthine-vestibular function).[1] After the May 15, 2006, hearing, the ALJ allowed Lane two weeks to submit additional evidence Lane had already requested from two physicians. Lane states that the letter from Dr. Shah was faxed to the ALJ on June 1, 2006. (R. at 187). In her decision, however, the ALJ stated that Lane had not submitted any additional evidence since the hearing, and that as of late July 2006, nothing had been submitted and "counsel has been given ample opportunity to submit the same." (R. at 18).

The Commissioner responds that the issue raised by Dr. Shah's letter is whether the evidence qualifies for a remand under sentence six of § 405(g). A sentence six remand contemplates evidence submitted after an ALJ's decision. Contrary to the Commissioner's contention, Lane has not requested a sentence six remand. The Commissioner admits that the evidence at issue was submitted by fax to the ALJ on June 1, 2006, but contends that this was after the ALJ had closed the record. The ALJ herself, however, does not state that

---

[1] 2.07 Disturbance of labyrinthine-vestibular function (including Meniere's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and, B. Hearing loss established by audiometry.

the record was closed on or before June 1, 2006. Rather, the ALJ's statements that nothing had been submitted as of late July and that counsel had been given ample opportunity to submit additional evidence indicate that if the ALJ had been aware of the June 1, 2006, evidence, she would have considered it rather than refused based on any two week post-hearing deadline.

The May 2006 evidence was not submitted for consideration pursuant to sentence six. Rather, it is reasonable to infer that although Lane submitted the evidence on or about June 1, 2006, it did not find its way to the ALJ. Clearly, the letter from Dr. Shah was not considered by the ALJ. (R. at 18). Under these circumstances, the court cannot determine in the first instance the weight that such evidence deserves or whether the ALJ should have re-contacted Dr. Shah for any particular clarification concerning the May 2006 letter. The case shall be remanded to give the ALJ the opportunity to review and articulate the weight to be given to the Dr. Shah letter (which is part of the record at page 188).

Lane next argues that the ALJ failed to articulate logical reasons for finding that Lane was not fully credible. Lane contends that the credibility determination was not supported by substantial evidence. In discussing Lane's credibility, the ALJ stated:

> However, the claimant's allegations are not totally supported by the record to the extent that they would preclude all work activity. The claimant has not seen Dr. Fritsch since March 2004, nor has she seen Dr. Shah since April 2004 (Exhibit 12B). Her last MRI indicated the entire tumor had been removed and had not regrown. She is taking no prescription medications. Her eye drops are not under a prescription. Her condition had not required her to see her doctors in two years and she is taking no prescription medication. She has some permanent restrictions because of her medical condition but those symptoms do not preclude all work activity. Many of the restrictions in the claimant's residual functional capacity shown below take into account her subjective allegations.

(R. at 16).

The ALJ further stated that "[s]ome of [Lane's] subjective allegations are credible, and the credible portions are reflected in the residual functional capacity shown below." *Id.* Lane argues that the ALJ failed to identify which allegations were credible and which were not, making any review speculative. Specifically, Lane argues that the ALJ failed to credit her allegations of problems with balance, motor coordination, and depth perception. Lane also asserts that the issue is dispositive because the vocational expert testified that if Lane's testimony about her symptoms and limitations was fully credible she would not be able to perform any work. (R. at 218).

The Commissioner contends that the ALJ's RFC determination reflects which allegations were found to be credible. Even if this were true, what remains is the question of what allegations the ALJ determined were *not* credible and why.

In making her credibility determination, the ALJ relied on her finding that Lane had not seen her treating physicians, Dr. Fritsch and Dr. Shah, since two years prior to the date of issuance of the decision. (R. at 16). She also relied on the fact that Lane took no prescription medications. *Id.* The ALJ failed to explain how these facts rendered Lane less than credible. When asked at the hearing about follow-up with her physicians, Lane testified that her doctors had told her a year after her surgery that her symptoms were permanent and would not improve. (R. at 206, 207, 209). If medication would not improve the types of impairments caused by nerve damage, then not taking medication should have no bearing on Lane's credibility. Contrary to the Commissioner's suggestion that the lack of follow-up and lack of prescriptions suggested that Lane's impairments were not as severe as alleged, there is no medical evidence supportive of this inference. Dr. Fritsch explained that the tumor had grown on Lane's vestibular nerves and that after surgery, Lane lost function of her cranial nerve causing paralysis of the right side of her face and causing the loss of half of her balance system. (R. at 139). Lane testified that as a result of the surgery, she had difficulty with balance and motor coordination, she suffered complete loss of hearing in her right ear, and she lost the ability to feel or control the right side of her face, all of which are supported by the physicians' records. (R. at 139, 160-61, 203-204). Absent evidence to support the ALJ's inference that Lane's symptoms could improve with further treatment or medication, the ALJ appears to have impermissibly "played doctor." *See Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

In addition, during the hearing Lane stated that she had balance problems but that if the ground was even and she walked slowly, she could walk without a cane, but that the farther she walked the more unstable and unsteady she would become. (R. at 203). The ALJ acknowledged that Lane testified that because of her balance problems, she needed to walk alongside something such as counters or chairs to prevent falling. (R. at 16, 212). Lane also testified that she avoided walking in open areas. (R. at 212). The ALJ acknowledged Lane's testimony that she had difficulty walking if it was sustained. (R. at 16). The ALJ noted that "light work" required "a good deal of walking or standing" (R. at 17) (citing 20 C.F.R. § 404.1567) but did not articulate how Lane's difficulties with balance and walking would allow her to walk up to six hours in an eight hour work day, in areas that did not provide structures on which she could lean. *See Zurawski v. Halter*, 245 F.3d 881, 886 n. 6 (7th Cir. 2001) (among other things, light work involves standing or walking, off and on, for six hours during an eight-hour workday) (citing 20 C.F.R. § 404.1567(b) and Social Security Ruling 83.10).

Lane also testified that she still had ringing in her ears which was distracting when she tried to concentrate. (R. at 213). In terms of her vision, she testified that her right eye was cloudy or blurry. (R. at 211). She further testified that her depth perception problems interfered with her eye/hand coordination. *Id.* The ALJ did not articulate whether she found these allegations credible.

The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

5

the individual's statements and the reasons for that weight." SSR 96-7p; *see also Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (pursuant to SSR 96-7p, ALJ must "articulate the reasons behind credibility evaluations"). Because the court must review the ALJ's reasoning rather than that of the Commissioner's lawyers, "the Commissioner's effort to pinpoint parts of the ALJ's decision that support the credibility finding is unhelpful." *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003). The ALJ did not specify which allegations were not credible. This, coupled with the vocational expert's testimony that if all of Lane's symptoms were credible she would not be able to work, prevents meaningful review. The court cannot trace the path of the ALJ's reasoning. Accordingly, the ALJ's credibility determination must be remanded for further consideration.

Lane next argues that the ALJ's reliance on the vocational expert testimony was erroneous because the hypothetical questions posed to the vocational expert failed to incorporate all of Lane's medically supported limitations. Lane specifically contends that the ALJ failed to incorporate Lane's problems with balance resulting in ataxia[2] and dysmetria.[3] The Commissioner responds that the ALJ properly included in the hypothetical questions all limitations that were contained in the RFC assessment. In one hypothetical question posed to the vocational expert, the ALJ limited lifting and carrying "because of the balance difficulties" to 20 pounds maximum, and work on level ground, and no climbing ladders or scaffolds. (R. at 216).

This claim of error overlaps Lane's arguments relating to the ALJ's credibility findings. Both claims challenge the accuracy and completeness of the ALJ's RFC assessment. As noted above, the vocational expert testified that if Lane's testimony about her symptoms, including her vision, hearing and balance, was all credible, then Lane could not perform any work. (R. at 218, 219). Under these circumstances, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted). On remand, should the ALJ determine that Lane's impairments do not satisfy any Listing, and then find that substantial evidence supports additional limitations based on Lane's problems with balance or any other symptoms, she shall incorporate such limitations in the hypothetical question posed to the vocational expert.

---

[2]Ataxia: Wobbliness, unsteadiness, and lack of coordination due to the brain's failure to regulate the body's posture and regulate the strength and direction of limb movements. The inability to control voluntary muscle movement, most frequently resulting from disorders in the brain or spinal cord. www.medicinenet.com; www.medical-dictionary.thefreedictionary.com.

[3]Dysmetria (Greek: "difficult to measure") refers to a lack of coordination of movement typified by the undershoot and/or overshoot of intended position with the hand, arm, leg, or eye. It is sometimes described as an inability to judge distance or scale. An inability or impaired ability to accurately control the range of movement in muscular acts. http://en.wikipedia.org; www.dictionary.reference.com.

Lastly, Lane argues that the ALJ failed to properly evaluate the opinions of treating physicians, specialists Dr. Shah and Dr. Fritsch. The ALJ acknowledged that in November 2004, Dr. Shah opined that Lane continued to have difficulty with her right eye and facial nerve functioning and that she had been unable to work since her April 2003 surgery. (R. at 15, 182). The ALJ noted that Dr. Shah "gives no diagnosis, no physical findings, nor information about objective tests, or even what the claimant's symptoms are," and that in April 2004 Dr. Shah stated that Lane had good lid closure and a good result from the canthoplasty and gold weight. (R. at 15, 161). For these reasons, the ALJ gave Dr. Shah's November 2004 opinion little weight.

The ALJ also gave little weight to the opinion of treating physician Dr. Fritsch that Lane was unable to work. (R. at 15, citing Exhibit 3F at 8). The ALJ stated that this opinion was given in December 2003 and was based "in large part due to [Lane's] eye problems." (R. at 15). Exhibit 3F at 8, however, is dated November 12, 2003, and states that because of "these problems," including her loss of half of her balance system, loss of function of her VII cranial nerve causing paralysis of her right face, and drying eye and inability to close her eye, Lane was not able to work. (R. at 139). The ALJ discredited Dr. Fritsch's opinion because Lane subsequently had eye surgery from which she reportedly had good results. (R. at 15). The ALJ speculated that Dr. Fritsch's opinion that Lane was unable to work "may have been a short-term restriction until after the eye surgery and recuperative period." *Id.*

Lane argues that the ALJ improperly failed to rely on any other medical source in rejecting the opinions of the treating physicians. The Commissioner responds, citing R. at 180, that the ALJ relied on the opinion of state agency physician, Dr. Bastnagel, that Lane was not disabled. The ALJ's reference to the state agency, however, was that "[t]he state agency determined that the claimant was disabled at the time her claim was processed, but that she would not be expected to be disabled for a full 12 months." (R. at 15). The ALJ did not cite to any record in making this statement. Based on these circumstances, the court cannot determine whether (and when) the state agency concluded that Lane was disabled, or whether the issue of whether Lane was disabled for a closed period of time was considered.

A treating physician's opinion is not automatically entitled to controlling weight. The Seventh Circuit Court of Appeals has held that if well-supported evidence is introduced which contradicts the opinion of a treating physician, even if it is that of non-treating, non-examining physicians, then the treating physician evidence is not controlling and it is just one more piece of evidence to consider. *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir. 2006). In addition, the court acknowledges that a treating physician's statement that a claimant is disabled or cannot work is not conclusive. *See Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'").

The ALJ's evaluations of the treating physicians' opinions, however, are not supported by substantial evidence. The ALJ's conclusion that Dr. Shah gave no diagnoses, physical findings, objective tests, or indication of Lane's symptoms, is based on a single document. The ALJ appears to have ignored Dr. Shah's other reports. *See* (R. at 157-161) (discussing facial nerve function, eye and vision symptoms, tinnitus, dysmetria on the right

side, ataxia. MRIs, etc.). The ALJ's speculation that Dr. Fritsch's opinion was applicable only for an unspecified period of time is not supported by substantial evidence. In addition, the ALJ failed to acknowledge that Dr. Fritsch's opinion addressed more than Lane's eye problems. It is less than clear whether any other well-supported evidence contradicts the opinions of these treating specialist physicians. In sum, the reasons given by the ALJ for not giving Dr. Shah's and Dr. Fritsch's opinions significant weight cannot be traced from the evidence. The weight to be accorded these opinions will need to be reconsidered on remand.

### III.  Conclusion

For the reasons discussed in this Entry, the ALJ's finding that Lane was not disabled is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: _09/15/2008_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana